# United States Court of Appeals
## For the First Circuit

---

No. 22-1918

UNITED STATES,

Appellee,

v.

ALEJANDRO CORTÉS-LÓPEZ,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

---

Before

Rikelman, Hamilton,* and Thompson,
Circuit Judges.

---

Franco L. Pérez-Redondo, Assistant Federal Public Defender, with whom Héctor L. Ramos-Vega, Interim Federal Public Defender, was on brief, for appellant.

Maarja T. Luhtaru, with whom W. Stephen Muldrow, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, were on brief, for appellee.

---

May 10, 2024

---

* Of the Seventh Circuit, sitting by designation.

THOMPSON, **Circuit Judge**.  Alejandro Cortés-López is serving a 24-month term of imprisonment after pleading guilty to conspiracy to commit mail and wire fraud.  In this direct appeal, he asks this court to vacate his sentence and remand to the district court because the government, he asserts, breached the plea agreement during the sentencing hearing.  On plain error review, we conclude the government did just that.  We therefore vacate Cortés' sentence and remand for further proceedings.

## HOW CORTÉS GOT HERE[1]

In July 2020, a grand jury indicted Cortés and a co-defendant with conspiracy to commit mail and wire fraud, one count of securities fraud, and several substantive counts of wire fraud. In March 2022, Cortés entered into a plea agreement with the government, stipulating that, from 2010 to 2017, he perpetrated a fraudulent financial scheme in which he solicited residents in Puerto Rico to invest in short-term, high-interest loans in the Dominican Republic through The Republic Group, Inc., a Florida corporation.  Cortés stipulated that he used the money from the investors to pay himself and to distribute supposed returns on prior investments to the earlier investors -- so-called "lulling payments" -- so the investors were further duped "into a false

---

[1] We draw the relevant facts presented herein from the plea agreement, the undisputed parts of the presentence investigation report, and the sentencing transcript.  See United States v. Ubiles-Rosario, 867 F.3d 277, 280 n.2 (1st Cir. 2017).

sense of security that their investments were safe and performing as promised."  Cortés copped to his actions, agreeing to plead guilty to conspiracy to commit mail and wire fraud.

In the plea agreement, the parties agreed that the sentencing guidelines calculation would lead to a total offense level (TOL) of 18.  Important for the discussion to come, the agreement's TOL contemplated a 14-level enhancement for the agreed-to $749,200 loss amount, which, when combined with a criminal history category of I (Cortés had no prior arrests or convictions), would suggest a guidelines sentencing range (GSR) of 27-33 months' imprisonment.  Nonetheless, the parties promised to jointly request a variant sentence of 24 months' probation regardless of the court's final TOL calculation.  In addition, the government agreed to move to dismiss the other counts in the indictment still pending at the time of sentencing.  For his part, Cortés waived his right to appeal the sentence if the sentence imposed by the district court was within or below the sentence recommendation agreed to by the parties.  The district court accepted Cortés' change of plea in April.

According to the Presentence Investigation Report (PSR), Cortés' and his co-defendant's financial fraud scheme resulted in more than $5.4 million in losses to the investors.  The probation office therefore applied an 18-level addition to the base offense level (applicable when the loss exceeds $3.5 million), as well as

a 6-level enhancement for substantial financial hardship to 25 or more victims.[2] Prior to the sentencing hearing, Cortés filed a written objection to these enhancements as not in line with the figures to which the parties had stipulated in the plea agreement. The probation office responded with an addendum to the PSR explaining how it arrived at the precise levels applied and noting that, based on information provided by the Assistant U.S. Attorney about the number of victims identified from the scheme, the higher loss amount and inclusion of the additional enhancement were "correct."

At Cortés' November 2022 sentencing hearing, his attorney told the court that 24 months' probation was a just sentence because this was Cortés' first offense, he accepted responsibility for his role in the scheme and, pursuant to an agreement with the Securities and Exchange Commission (SEC) resulting from the prosecution of the same fraud scheme in the Southern District of Florida, he had been working and paying restitution even before the grand jury indicted him in this case.[3] The government's response was, in its entirety:

---

[2] These proposed enhancements meant a TOL of 28 which, when combined with a criminal history category of I, provided a GSR of 78-97 months.

[3] In the plea agreement, Cortés

agree[d] to the entry of an order of restitution in the amount of **$749,200** jointly and severa[l]ly with the co-defendant, through the payment plan established pursuant

- 4 -

> Your Honor, we will be very brief, but before we make
> our argument, I would like to highlight the fact that
> the defendant filed some objections to the [PSR], and
> Probation responded to those objections by Defendant,
> and the United States believes the United States
> Probation Office is correct in their assessment of those
> enhancements. Nonetheless, the United States and the
> defendant entered into a plea agreement wherein the
> United States and the defendant took into consideration
> a specific amount of loss.
>
> So for that reason, the United States is standing by its
> plea agreement recommendation of 24 months of probation
> in this case for this defendant, together with a judgment
> for restitution in the amount of . . . $749,200 that the
> defendant should pay jointly and severally with the co-
> defendant in this case. The defendant should do this
> pursuant to the payment plan established already in the
> case before the [SEC], and that case number is 20-CV-
> 23616-DPG. That would be all from our part.

The district court summarily denied Cortés' objections to the PSR

after commenting "that the probation officer is free to consider

everything, not just what's in the plea agreement." The Assistant

U.S. Attorney then added that she "wanted to remind the Court that

we have two victims present who would like to speak." After the

two victims spoke, Cortés allocuted at some length, apologizing to

his family, acknowledging responsibility for his actions, and

pledging an intent to spend the rest of his life repairing the

financial harm he caused to the victims of the scheme.

---

> to the judgment entered against the defendant in case
> no. 20-cv-23616-DPG on September 30, 2020 in the United
> States District Court, Southern District of Florida in
> favor of the [SEC].

The district court assigned the same base offense level of 7 as that reflected in the plea agreement and subtracted 3 levels for acceptance of responsibility but then added 18 levels (rather than the plea-agreement-contemplated 14) accounting for the $5.4 million loss amount listed in the PSR and added 6 levels for causing substantial financial hardship to more than 25 victims. This brought the TOL to 28 (rather than 18). With a criminal history category of I, the GSR was 78-97 months. The court said it had considered the PSR, the plea agreement, the sentencing memoranda filed by each side, the victims' statements, the parties' arguments, Cortés' allocution, and the 18 U.S.C. § 3553(a) factors. The court opted to impose a sentence of incarceration, stating that the requested sentence of probation did not reflect the seriousness of the offense, promote respect for the law, protect the public, or address deterrence and punishment, but assigned a below-guidelines sentence in consideration that Cortés' involvement was less than that of his co-defendant. The court pronounced a sentence of 24 months' imprisonment to be followed by 3 years of supervised release and $5.4 million in restitution to be paid jointly and severally with the co-defendant in accordance with the co-defendant's judgment. Cortés' attorney immediately requested reconsideration and proposed a 5-year sentence of probation so Cortés could continue to work and make restitution payments. The court summarily denied this idea. Before the

hearing ended, Cortés' attorney lodged an objection to the
sentence, labeling it procedurally and substantively
unreasonable.[4]

Now before us, Cortés challenges his 24-month term of
immurement on the sole basis that the government breached the plea
agreement during the sentencing hearing by: (1) voicing support
for the higher TOL calculated in the PSR; and (2) failing to
"advocate meaningfully" for the agreed upon 24-month probation
sentence.[5]

**DISCUSSION**

We kick off our discussion by deciding whether Cortés
forfeited his arguments by not first raising them to the district
court, a threshold point so we can pin down the applicable standard
of review for Cortés' challenge to his sentence.

This court generally reviews a claim that the government
breached a plea agreement de novo, but the review shifts to plain

---

[4] As promised, the government requested that the court dismiss
the indicted counts of securities fraud and wire fraud; the court
dismissed these counts.

[5] Cortés' plea agreement includes a waiver of appeal
provision, triggered "if the sentence imposed by the [c]ourt is
within or below the sentence recommendation submitted by the
parties." Waiver provisions such as this one foreclose only the
"appeals that fall within its scope." United States v. Almonte-
Nuñez, 771 F.3d 84, 88 (1st Cir. 2014). As Cortés points out, and
the government agrees, this waiver clause does not preclude his
appeal because the district court sentenced him to a term of
imprisonment and not to a term of probation -- the sentence
therefore falls outside the scope of that contemplated by the
agreement.

- 7 -

error when a defendant had an opportunity to raise the issue to the district court but did not and therefore, in legal lingo, forfeited the argument. <u>United States</u> v. <u>Sierra-Jiménez</u>, 93 F.4th 565, 570 (1st Cir. 2024). Cortés admits that he did not raise the breach-of-the-agreement issue to the district court, but he attempts to salvage our plenary review by arguing that any objection he might have raised at the sentencing hearing was futile. According to him, this judge has an "unflinching, unyielding position that government promises begin and end with the rote recitation of a number of months," meaning as long as the government mouths, on sentencing day, the agreed-upon months and nothing more, then its obligation to the bargain is fulfilled. Just look, says Cortés, at two other appeals pending before this court wherein the defendants alerted the district court in writing to the government's alleged breaches of the respective plea agreements during the lead up to the sentencing hearing, but the district court denied their plaints.[6] And in any event, Cortés continues, this court has excused "[a] party's failure to spell out a claim in the district court . . . if he had no reasonable opportunity to do so," <u>United States</u> v. <u>Fernández-Garay</u>, 788 F.3d

---

[6] In those two cases, the respective defendants argued that the government, in its sentencing memoranda, included content and arguments intended to sway the court to impose higher sentences than those to which the government had agreed in the respective plea agreements.

- 8 -

1, 4 (1st Cir. 2015) (citing Fed. R. Crim. P. 51(b)), because "a court should not require a lawyer 'to persist stubbornly when the judge has made it perfectly clear that he does not wish to hear what the lawyer has to say,'" id. (quoting United States v. Toribio-Lugo, 376 F.3d 33, 41 (1st Cir. 2004)).  This Fernández-Garay conundrum, implies Cortés, is the predicament in which he found himself below.  However, we cannot agree with Cortés on this point.  In Fernández-Garay, the court completely cut off the attorney's attempt to object during a sentencing hearing, precluding the attorney from stating the intended objection.  Id.  Here, by contrast, there is no indication anywhere in the record that Cortés' counsel attempted to bring the purported breach to the court's attention at all, either in papers leading up to sentencing, or even when he objected at the end of the hearing to the sentence as procedurally and substantively unreasonable.  As the government argues, neither Fernández-Garay nor the unrelated pending appeals get Cortés over the hurdle of this circuit's clear precedent that alleged breaches are reviewed for plain error when the issue is raised for the first time on appeal.  See Sierra-Jiménez, 93 F.4th at 570; United States v. Gall, 829 F.3d 64, 70 (1st Cir. 2016).  We will therefore review Cortés' arguments about the government's purported breach under the plain error standard of review, meaning "we consider whether:  (1) there was error, (2) it was plain, (3) the error affected the defendant's substantial

rights, and (4) the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings." Sierra-Jiménez, 93 F.4th at 570 (quoting United States v. Rivera-Ruiz, 43 F.4th 172, 179 (1st Cir. 2022)).

The applicable standard of review in place, we turn to laying out the legal principles that govern our consideration of purported plea agreement breaches by the government. Out of the gate one indisputable point is worth noting. There is no doubt whatsoever that plea agreements play an "important role . . . in our criminal justice system." United States v. Frazier, 340 F.3d 5, 10 (1st Cir. 2003). As this court has long acknowledged:

> Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shortening the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned.

Id. (quoting Santobello v. New York, 404 U.S. 257, 261 (1971)). In addition, plea bargaining "conserve[s]" "scarce judicial and prosecutorial resources . . . for those cases in which there is a substantial issue of the defendant's guilt or in which there is substantial doubt that the [government] can sustain its burden of proof." Brady v. United States, 397 U.S. 742, 752 (1970); see

also Stephanos Bibas, Plea Bargaining Outside the Shadow of Trial,
117 Harv. L. Rev. 2463, 2470 (2004) (explaining that "[t]he
strength of the prosecution's case is the most important factor"
influencing the government's negotiations during the plea-
bargaining process).  The process of plea bargaining, therefore,
"flows from 'the mutuality of advantage' to defendants and
prosecutors, each with his own reasons for wanting to avoid trial."
Bordenkircher v. Hayes, 434 U.S. 357, 363 (1978) (quoting Brady,
397 U.S. at 752).

       In giving structure to the plea-bargaining apparatus,
we've leaned on one primary legal theory which sounds in contract.
Thus, application of traditional contract law principles allows us
to interpret plea agreements and evaluate the parties'
performances of duties thereunder.  United States v. Brown, 31
F.4th 39, 50 (1st Cir. 2022).  We've noted that when the government
enters into a plea agreement with a defendant, the court should
hold the government to "the most meticulous standards of both
promise and performance" because "a defendant who enters a plea
agreement waives fundamental constitutional rights."  Id. (first
quoting United States v. Marín-Echeverri, 846 F.3d 473, 478 (1st
Cir. 2017)).  The government, then, must serve more than simple
"lip service to, or technical compliance with, the terms of a plea
agreement," in part because the defendant is entitled to both the
"benefit of the bargain struck in the plea deal and to the good

- 11 -

faith of the prosecutor." United States v. Lessard, 35 F.4th 37, 42 (1st Cir. 2022) (quoting other First Circuit cases). We've also underscored the challenge of our compliance examination indicating that there is "no magic formula" for determining whether a prosecutor satisfied their duty under plea agreement terms to recommend a particular sentence. Id. (cleaned up). Rather, this court considers the totality of the circumstances, asking "whether the prosecutor's 'overall conduct [is] reasonably consistent with making [the promised] recommendation, rather than the reverse.'" Id. (alterations in original) (quoting United States v. Canada, 960 F.2d 263, 269 (1st Cir. 1992)). In fulfilling its side of the bargain, the government "is not obliged to present an agreed recommendation either with ruffles and flourishes," United States v. Montañez-Quiñones, 911 F.3d 59, 65 (1st Cir. 2018), or "with any particular degree of enthusiasm," though it is improper for them "to inject material reservations about the agreement to which the government . . . committed," Canada, 960 F.2d at 270. That said, "we are wary of government claims that the prosecution 'technically' complied with the terms of the agreement when the net effect of the government's behavior undermines the 'benefit of the bargain' upon which a defendant has relied." Frazier, 340 F.3d at 10. "Our case law prohibits 'not only explicit repudiation of the government's assurances[] but must in the interests of

fairness be read to forbid end-runs around them.'" Id. (quoting
United States v. Saxena, 229 F.3d 1, 6 (1st Cir. 2000)).

While prosecutors are duty-bound to carry out both the
letter and spirit of the government's plea agreement, this court
recognizes that they have "a concurrent and equally solemn
obligation to provide relevant information to the sentencing
court," United States v. Almonte-Nuñez, 771 F.3d 84, 86, 90 (1st
Cir. 2014), including "full and accurate information about the
offense and the offender," id. at 86.  Within this concurrent
obligation "[w]e have recognized a tension between the general
principle that the government has a duty to provide to the court
reliable information relevant to sentencing and the fact that
'certain factual omissions, helpful to the defendant, may be an
implicit part of the bargain in a plea agreement.'" United States
v. Davis, 923 F.3d 228, 237 (1st Cir. 2019) (alteration omitted)
(quoting United States v. Miranda-Martinez, 790 F.3d 270, 274 (1st
Cir. 2015)).  Overall, the prosecutor's "twin" duties to stand by
the plea agreement and provide information to the court "can
sometimes 'pull in different directions,'" United States v.
Ubiles-Rosario, 867 F.3d 277, 283 (1st Cir. 2017) (quoting United
States v. Cruz-Vázquez, 841 F.3d 546, 549 (1st Cir. 2016)), but

> "there is a material difference between answering
> questions asked by a sentencing court or bringing facts
> to the court's attention," on the one hand, and, on the
> other, engaging in conduct that violates the [explicit]
> terms of the plea agreement, by, for example,

> "affirmatively supporting an adjustment" to the
> guideline range when the plea agreement "obligate[s] the
> government to refrain from arguing further guideline
> adjustments,"

id. at 284 (second alteration in original) (quoting Almonte-Nuñez,

771 F.3d at 90).  With these general legal principles in the

backdrop, we proceed to our review of what happened here, starting

with whether the government's conduct at the sentencing hearing

plainly breached the plea agreement.  See United States v. Riggs,

287 F.3d 221, 225 (1st Cir. 2002).  Cortés contends it did so in

two specific respects, but, as we've already established, we review

circumstances in their totality to determine whether any breach

occurred.  See Lessard, 35 F.4th at 42.  To that end, we present

-- and then proceed to consider -- all of Cortés' arguments

together through plain error spectacles.

        According to Cortés, the government's unsolicited

statement of agreement at the hearing with the PSR's TOL

calculation (recall it was 10 points higher than the TOL

contemplated in the plea agreement) represented a repudiation of

the agreement between the parties about the appropriate TOL

calculation and was in fact a form of advocating for the higher

TOL.  Add to that, says Cortés, the government's sole one-sentence

request for the agreed-upon 24 months' probation cannot reasonably

be viewed as fulfilling its obligation to support the negotiated

agreement because the request immediately followed the

government's acknowledgment that the plea agreement included an inaccurate guidelines calculation.  To again bring to the gentle reader's mind what the government said below when it set out to fulfill its obligations under the plea bargain:

> [T]he United States believes the United States Probation Office is correct in their assessment of those enhancements.  Nonetheless, the United States and the defendant entered into a plea agreement wherein the United States and the defendant took into consideration a specific amount of loss.  So for that reason, the United States is standing by its plea agreement recommendation of 24 months of probation in this case for this defendant.

Cortés points out that the government did not even try "to explain to the court how its view of the § 3553(a) factors shaped its recommendation for a [TOL] of 18 [in the plea agreement], as opposed to 28 [in the PSR]."  Rather, argues Cortés, its recommendation fell "woefully short of fulfilling" its duty under the plea agreement because "no impartial observer would perceive the prosecutor's tepid statement as a genuine endorsement of a probationary disposition."

Cortés acknowledges that the government "stood by" the recommendation for 24 months' probation and was not obligated to "argue enthusiastically" but he asserts that the government was required to do more than what it did.  Cortés says he "bargained for the United States to put its reputational weight behind" the sentencing recommendation, which, according to him, includes explaining to the district court why a sentence of probation was

warranted here rather than incarceration.  Instead, the district
court heard the prosecutor endorse the final TOL absent any
justification as to why it had agreed to and recommended the below-
guidelines, non-incarcerative sentence.  To Cortés, this silence
signaled to the district court that the government "didn't really
believe in the agreement's recommendation."  This was an error and
a breach, argues Cortés, when viewed in light of this court's prior
discussions and holdings about claimed plea agreement breaches.

The government, of course, sees things differently.  It
argues that it complied to a T with the terms of the agreement,
doing exactly what it promised to do, and -- responding to Cortés'
asseverations -- did not maneuver behind the scenes to raise the
TOL in the PSR, undermine the plea agreement, or advocate for the
application of a higher TOL than that memorialized in the plea
agreement.  Providing probation with the information about the
victims was part of its duty to provide accurate information to
the court, argues the government, as was noting the defendant's
pre-hearing objections to the PSR's TOL since the defendant had
failed to address those objections during his own sentencing
argument to the court.  The government also reminds us that it
recommended the lower restitution amount agreed to in the plea
agreement, was unequivocal in its recommendation for 24 months'
probation, and followed through with dismissing the remaining
counts.  The government urges us to conclude that the totality of

the circumstances is therefore distinguishable from those occasions where this court has found a breach.

When previously presented with this type of claim on appeal, this court has examined government conduct in its conveyance of a plea agreement and has explained when its actions have fallen short:  The government presented the parties' sentence recommendation but undercut it by making "grudging and apologetic" references to the plea agreement and emphasizing the defendant's roles in the offense before urging the court to impose a lengthy sentence, Canada, 960 F.2d at 269; the government -- in its sentencing memorandum -- opposed an agreed-to acceptance-of-responsibility adjustment to the guidelines calculation, United States v. Clark, 55 F.3d 9, 12 (1st Cir. 1995); and the government, despite recommending the agreed-upon sentence, argued the facts in a way that undercut the recommendation, United States v. Gonczy, 357 F.3d 50, 54 (1st Cir. 2004).

Conversely, on the "no breach" side of our case law, the government is correct that it can acknowledge the accuracy of the GSR calculation in a PSR without breaching a plea agreement.  See United States v. Carbajal-Váldez, 874 F.3d 778, 785-86 (1st Cir. 2017).  The government may also provide "facts concerning the background, character, and conduct of the defendant" without giving us pause.  Ubiles-Rosario, 867 F.3d at 284 (quoting Miranda-Martinez, 790 F.3d at 274).  We have further found no breach

occurred when, despite highlighting the dangerous nature of a defendant's conduct and his "substantial violent criminal record," Brown, 31 F.4th at 46, the government made statements "'early, often, and throughout the sentencing' hearing" that its recommended sentence was based on a specific TOL, id. at 51 (quoting Ubiles-Rosario, 867 F.3d at 286-87); see also Rivera-Ruiz, 43 F.4th at 180 (holding no breach when the government repeatedly stated the agreed-to recommendation but volunteered additional facts not included in the plea agreement in response to the defendant's argument about why the agreed-to sentence was warranted); Lessard, 35 F.4th at 43 (holding no breach when the government argued against the downward variant sentence the defendant requested after complying with the terms of the agreement and requesting a sentence at the low end of the GSR).

All in all, when we survey this court's previous discussions of alleged breaches a clear pattern is revealed. Under a totality-of-the-circumstances lens, an appellant need not show a complete out-and-out repudiation of a plea agreement before this court will conclude the government failed to uphold its end of the bargain. Rather, we ask "whether the prosecutor's 'overall conduct is reasonably consistent with making the promised recommendation, rather than the reverse,'" Lessard, 35 F.4th at 42 (cleaned up) (quoting Canada, 960 F.2d at 269); see United States v. Wyatt, 982 F.3d 1028, 1030 (7th Cir. 2020) ("Prosecutors, who have the benefit

of drafting plea agreements to their own satisfaction, must adhere to their promises.").  Also, we believe the sum of our case law reflects an elemental understanding of what we should reasonably expect from the government at sentencing:  "[W]hen the net effect of the government's behavior [at sentencing] undermines the benefit of the bargain upon which a defendant has relied," technical compliance with the plea agreement may not suffice to make up for other statements and behavior that can be viewed as an end-run around the terms of the agreement.  <u>Frazier</u>, 340 F.3d at 10 (internal quotation marks and citation omitted).  Putting it all together, determining whether a breach occurred is highly dependent on the individual circumstances of the case at bar.  With that lens in place, we can now focus on the specific circumstances before us in Cortés' sentencing experience, explaining why we agree with him that the government's overall conduct here was, in fact, a breach of the plea agreement.

As Cortés argues, the government bargained for and promised to recommend a sentence based on a TOL which considered $749,200 as the loss amount.  But its statements at the hearing imply it changed its mind at some point between providing information about the victims to the probation office and the hearing.[7]  At the sentencing hearing, the government did not simply

---

[7] Although Cortés hopes we perceive the government's action of providing the probation office with the raw information about

give a nod to the accuracy of probation's guidelines calculations. It announced that the PSR and not the plea agreement reflected the "correct" loss amount, thereby completely undermining the previously bargained-for and promised numbers.  While the government says it was simply offering information to the court to complete the picture of the pre-hearing objections and resolutions, when viewed in context, we cannot agree.

Indeed, the cold sentencing transcript shows the dynamics that were in play at the proceeding.  The first words spoken by the prosecutor after the defense finished its sentencing argument were not ones that placed before the court the substance of the parties' plea agreement but were, instead, utterances to "highlight" the objections to the PSR lodged by the defendant to which the probation office had responded by providing supportable justifications for the increased, additional enhancements.  The prosecutor then, sua sponte and without elaboration, indicated her agreement with the PSR's calculation before ultimately stating that the parties had entered into a plea agreement with a different loss amount in mind and so the government would "stand by" the

_____

the victims of Cortés' scheme (from which probation decided the 6-level enhancement for substantial financial hardship to 25+ victims applied) as further evidence of the government's breach, this action squarely falls into the category of the government's "solemn obligation" to provide the district court with accurate information about the case, starting with responding accurately to the probation office's requests for information.  See Ubiles-Rosario, 867 F.3d at 283.

recommendation in the agreement for the sentence and restitution figures reflected therein.  And that (other than reminding the court that two victims were present to make statements on the record) was the sum total of what the prosecutor chose to offer about the plea deal prior to the district court imposing sentence.

To be clear, in finding fault, as we do, with the government's performance, we are not saying the government had a duty to actively advocate for the agreed-upon sentence or to present the recommendation with "ruffles and flourishes." Montañez-Quiñones, 911 F.3d at 65.  And, as the government points out in its briefing, in Lessard we held there had been no breach in part because the plea agreement had not imposed an "affirmative obligation of either advocacy or explication on the prosecutor" regarding the agreed-to low-end GSR recommendation.  35 F.4th at 44.  We perceive a difference, however, between advocacy and some minimal explanation to the district court about why the government agreed to the specific recommendation, at least when, as here, the recommended sentence is so drastically below the GSR the government thought accurately captured the details of the offense at the time the plea was negotiated.  Remember, even under the TOL of 18 contemplated in the plea agreement, the GSR would not have authorized probation.  The government agreed to recommend a true and substantial downward variation, not merely a low-end guideline sentence.  Moreover, in fulfilling its dual obligations to keep

its bargained for promise to Cortés and concurrently provide accurate information to the court, it nonetheless had an incontrovertible, minimal obligation not to champion a more punitive sentence. Cf. Gonczy, 357 F.3d at 53 (concluding breach occurred when "the substance of the prosecutor's argument at the sentencing hearing can only be understood to have emphasized [the defendant's] wrongdoing and his leadership role in the offense, advocating for the imposition of a higher sentence than the agree-upon term"); Wyatt, 982 F.3d at 1030. Viewed in its totality, we believe the government's presentation below is best understood as advocating, in effect, for a more punitive sentencing outcome. See Frazier, 340 F.3d at 10. In United States v. Brown, 5 F.4th 913 (8th Cir. 2021), (a case Cortés brought to our attention) our sister circuit held the government breached the plea agreement when it endorsed the higher base offense level presented in the PSR than the one it and the defendant had mutually agreed upon in the agreement even though the prosecutor had not specifically championed a higher sentence at the sentencing hearing than that spelled out in the agreement. Id. at 916 ("[A]lthough the [g]overnment boasts that it scrupulously adhered to the plea agreement, its conduct . . . tells a different story." (internal quotation marks omitted)). We find Brown's reasoning helpful.

Given the great disparity between probation's loss amount calculus and the drastically lower loss amount figure the

parties' plea deal contemplated, and given the government's affirmative assent to probation's figures, the district court was left to speculate about what rationale might reasonably support such a seemingly off-kilter, well-below guidelines recommendation. Put differently, the government's failure to provide at least some explanation for its decision to lend its prestigious imprimatur to such a dramatic downward variation likely caused the district court to view the government's "stand by" statement as just hollow words, undermining any notion that the government viewed the plea agreement as fair and appropriate. Here, the agreed recommendation in the plea agreement called not for a small difference in degree of punishment but a categorical difference in kind: probation v. prison.  In context, the government's reserve here -- tantamount to a repudiation of the agreement -- implicitly but clearly made it known to the district court that it could dispense with a careful consideration of the parties' bargained-for plea agreement and throw that deal out the window.  See Frazier, 340 F.3d at 10 (noting that this court "forbid[s] end-runs around" the government's promises in the plea agreement); Riggs, 287 F.3d at 224-25 (explaining a breach occurred at the sentencing hearing when the government remained silent about the plea agreement, including the drug quantity and recommended sentence contemplated therein); Clark, 55 F.3d at 12 (holding the government breached the plea agreement by implicitly opposing an agreed-upon reduction

in the guidelines calculus -- "formal opposition was not
necessary"); Brown, 5 F.4th at 916; cf. Ubiles-Rosario, 867 F.3d
at 286-87 (holding no breach when the government expressed its
recommendation "early, often, and throughout the sentencing").[8]
So when we ask here "whether the prosecutor's 'overall conduct
[was] reasonably consistent with making [the promised]
recommendation, rather than the reverse,'" Lessard, 35 F.4th at 42
(second alteration in original) (quoting Canada, 960 F.2d at 269),
we answer, no.

     Moving along, when a defendant can show a plain violation
of the plea agreement (taking care of plain error prongs 1 and 2),
we proceed to the third prong of plain error review and consider
whether the defendant has shown that the government's breach was
prejudicial to him.  See Gall, 829 F.3d at 73 (citing Puckett v.
United States, 556 U.S. 129, 141-42 (2009)).  This prong "generally
requires the defendant to 'show a reasonable probability that, but

---

[8] Despite the government's assertion otherwise, United States
v. Gall is distinguishable.  In that case, we held, on plain error
review, that there was no breach when the government stated the
guidelines calculation in the PSR (which included two enhancements
not reflected in the plea agreement) was correct and recommended
the top of the GSR agreed to in the agreement.  829 F.3d 64, 73-
74 (1st Cir. 2016).  Recommending the top end of the GSR, as
permitted by the terms of a plea agreement despite probation's
calculation of a higher GSR, is not the same circumstance as
promising to recommend a downward departure from the GSR and a
sentence of probation, not incarceration.  Especially when, in
Gall, defense counsel offered their own acknowledgment that the
record correctly supported the GSR presented in the PSR.  Id.

for the error, the outcome of the proceeding would have been different.'" United States v. Canty, 37 F.4th 775, 790 (1st Cir. 2022) (quoting Rosales-Mireles v. United States, 585 U.S. 129, 134-35 (2018)); see Miranda-Martinez, 790 F.3d at 275 (considering whether the alleged breach had affected the sentencing outcome). Further, in our evaluation of prejudice we also keep in mind that, in agreeing to plead guilty, a defendant waives important constitutional rights afforded to all criminally accused; a knowing and voluntary surrender of rights "not in exchange for the actual sentence or impact on the judge, but for the prosecutor's statements in court." Correale v. United States, 479 F.2d 944, 949 (1st Cir. 1973). Stated differently, "[t]he quid pro quo from the defendant's point of view . . . [is] the prestige of the government and its potential to influence the district court." United States v. Velez Carrero, 77 F.3d 11, 11-12 (1st Cir. 1996).

As pressed by the government, this court has previously rejected, in context-specific reviews, certain claims of prejudice tendered by defendants asserting plea breaches. But those cases are distinguishable from the one we address here. In Gall, we held no prejudice had been shown because defense counsel admitted at sentencing that the record supported the PSR's different guideline calculation than the one agreed to in the plea agreement and the district court's sentencing explanation provided no indication that it was the prosecutor's statement agreeing with

the PSR's guidelines calculation which influenced the court's decision. 829 F.3d at 74. In Sierra-Jiménez, this court concluded the plea-agreement-breach claim failed because nothing in the record "suggest[ed] . . . that the district court would have imposed [the requested] sentence if the government had uttered such recommendation." 93 F.4th at 570-71. In the case at hand, defense counsel, unlike counsel in Gall, made no concession that the PSR accurately reflected the appropriate loss amount and resulting guidelines calculation. Moreover, the district court clearly announced (before pronouncing Cortés' sentence) that it had considered (among other things) the "arguments by the prosecutor and the defense counsel" and that the sentencing factors pursuant to § 3553(a) would not be met by a sentence of probation.

In addition, the government deprived Cortés of its potential influence over the imposed sentence by neglecting to vocalize any reasons for agreeing to the below-guidelines recommendation. See Velez Carrero, 77 F.3d at 12. As Cortés emphasizes, had the government provided some explanation for the disparity in the loss amount calculation and why it thought probation was the appropriate punishment for Cortés in this case or which § 3553(a) factors shaped its view of the case, there was a reasonable probability that the district court would have sentenced differently. Therefore, in our view of the record,

Cortés has shown the government's breach resulted in prejudice to him.  See Rosales-Mireles, 585 U.S. at 134-35.

So we march on to the fourth prong, examining whether "the error adversely impacted the fairness, integrity, or public reputation of judicial proceedings." Sierra-Jiménez, 93 F.4th at 570.  We are convincingly satisfied that it did.  Cortés argues that allowing the government's breach here to go uncorrected would affect the integrity of the justice system because it would lose credibility, the very tenet on which the plea-bargaining system is based.  We agree because, as we've stated before, "violations of plea agreements on the part of the government serve not only to violate the constitutional rights of the defendant, but directly involve the honor of the government, public confidence in the fair administration of justice, and the effective administration of justice in a federal scheme of government." Riggs, 287 F.3d at 226 (quoting United States v. McQueen, 108 F.3d 64, 66 (4th Cir. 1997)) (concluding that the government's breach of the plea agreement met the fourth prong of plain error review).

### WHERE THE CASE GOES FROM HERE

For the reasons explained above, the government breached the plea agreement during the sentencing hearing.  The district court's judgment is therefore **vacated**, and we **remand** this case for further proceedings before a different district court judge.  See Brown, 5 F.4th at 917 (applying the same disposition after holding

the government breached the plea agreement); <u>Riggs</u>, 287 F.3d at

226 (same); <u>Clark</u>, 55 F.3d at 15 (same).[9]

---

[9] The Bureau of Prisons' electronic database for the location
of inmates shows that Cortés was released from incarceration in
early April, about one month after oral argument in this case.  In
the intervening period, neither party has suggested that his appeal
is moot.  And, in fact, his release does not automatically moot
this appeal, given that Cortés is still serving a three-year term
of supervised release and is subject to a restitution order based
on the higher total loss amount in the PSR.  <u>See</u> <u>United States</u> v.
<u>Reyes-Barreto</u>, 24 F.4th 82, 84-86 (1st Cir. 2002).